THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Brian William Scott, Appellant.
 
 
 

Appeal From Greenville County
 Edward W. Miller, Circuit Court Judge

Unpublished Opinion No. 2006-UP-285
Heard May 31, 2006  Filed June 19, 2006   

AFFIRMED

 
 
 
Symmes Watkins Culbertson, of Greenville, for Appellant.
Attorney General Henry Dargn McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., Office of the Attorney General, of Columbia, Robert M. Ariail, 13th Circuit Solicitors Office, of Greenville, for Respondent.
 
 
 

PER CURIAM:  Brian William Scott appeals the circuit courts denial of his motion for a new trial, arguing the State violated his due process rights by failing to comply with Rule 5, SCRCrimP, and the mandates of Brady v. Maryland, 373 U.S. 83 (1963).  We affirm. 
FACTS
In February 1997, a jury found Brian Williams Scott guilty of murder and sentenced him to life imprisonment.  At his trial, the State relied heavily on the testimony of James Johnson and Tyrone Adams, both present at the alleged murder of Tyrone
Longino.
According to James Johnsons trial testimony, he met Scott while working at a local restaurant a couple of weeks prior to the incident in question.  Johnson testified he left work around 10:30 p.m. on the night of February 14, 1992.  While walking to a friends house, Johnson ran into Scott, Adams, Longino, and another coworker.  He was introduced to Adams and Longino for the first time.  The group then went to an apartment shared by Scott and Logino and proceeded to consume alcohol and smoke marijuana.  At some point, Johnsons other coworker left.  The remaining four then spent some time driving around in Longinos car and making phone calls in an attempt to purchase drugs.
Following several failed attempts to secure a drug purchase, the group pulled into a gas station.  Adams exited the vehicle and walked to a nearby phone to page a potential seller.  Johnson testified that an argument then ensued between Scott and Longino over the roommates apparent lack of enthusiasm for the drug purchase.  According to Johnson, Scott became increasingly aggravated at Longino and eventually began strangling him with an unknown object from his position in the seat directly behind Longino.  Once Longino was rendered unconscious, Scott ordered Adams and Johnson to help him move the victim into the front passenger seat.  He instructed Adams to drive as he and Johnson returned to the back seat.  Johnson testified that shortly thereafter Scott suddenly pulled out a large kitchen knife and, reaching around from the back seat, stabbed Longino in the chest.
According to Johnson, Scott then directed Adams to drive to a nearby park, where Scott and Adams placed Longinos body in a dumpster. Afterward, Scott returned to his apartment.  Adams and Johnson drove Longinos car to Adams apartment and smoked crack until Johnson reported to work the following morning.  
On February 15, Greenville police received a call reporting a parked car at a local apartment complex that appeared to have a bloodstained interior.  Officers located the vehicle and checked the suspected drivers apartment.  In the apartment, officers found Adams, who claimed he borrowed the car from Longino and explained the blood stains as the result of an unfortunate nosebleed.  Adams admitted to partially cleaning out the car and revealed the location of his bloodstained clothing.  He was arrested for an outstanding warrant and the car was impounded.  Police verified that the car belonged to
Longino.
The police then attempted to locate Longino at his apartment to verify Adams nosebleed claim.  At Longinos apartment, officers encountered Scott for the first time.  Scott had a large knife stuck in the back of his belt, which was taken by the police.  He claimed he hadnt seen Longino in days, but acted nervous around the investigating officers.  After Scott refused to consent to a search of his apartment, the officers returned the knife and left the residence.
At approximately 11:30 p.m. that night, the Greenville City Police received a call from county authorities reporting that a body was found in a dumpster at a local park.  The body was identified as Longino.  Injuries to the body confirmed he was strangled and stabbed once in the chest.
Officers then interrogated Adams a second time regarding the events of February 14.  At this point, Adams submitted a written statement claiming Scott strangled and stabbed Longino and the group then helped him hide the body in the park dumpster.  Pursuant to Adams revised statement, an arrest warrants was issued for Scott.  Through an anonymous tip, Scott was located hiding under a bed at his girlfriends apartment, the large knife still in his possession.  After his arrest, Scott refused to answer questions concerning the death of his roommate.  On February 18, Johnson turned himself in to police after seeing a story about the murder on the local news.  Johnson then submitted a written statement consistent with Adams recollection of Longinos death.
Scott, Adams, and Johnson were indicted for Longinos murder.  In 1992, the charges against Scott were dismissed, presumably due to an issue concerning the location of witnesses.  In 1996, however, Scott was re-indicted for murder and tried before a jury.  Scotts trial took place prior to any prosecution of Adams or Johnson regarding Longinos death.
As previously stated, the State relied heavily on Adams and Johnsons testimony concerning the events in question.  Adams trial testimony regarding Longinos murder was consistent with that of Johnson, reviewed above.  Particularly germane to this appeal, Adams testified he returned to the car from the gas station pay phone to find Scott strangling Longino with what appeared to be a piece of rope.  Adams also testified he witnessed Scott stab Longino from the rear seat.  The jury found Scott guilty of murder and he was sentenced to life imprisonment.  Adams eventually pled guilty to obstruction of justice and received a seven year sentence with credit for time served.
In 2000, Scott retained counsel and initiated a post conviction relief action (PCR).  Scotts PCR counsel filed a Freedom of Information Act request with the 13th Circuit Solicitors Office seeking all information in any way related to the death of Longino.  After an extended, often heated, exchange of phone calls and letters between Scotts counsel and the solicitors office, the requested documents were eventually turned over.  
Included in these documents was a certified written statement signed by Adams entitled Notice of Intended Plea and dated May 20, 1994.  In this document, Adams avers the following:

3. Defendant [Adams] was, consistent with prior statement(s), talking on the telephone in the area of the crime having no knowledge of the act until he entered the vehicle in which he was a passenger, finding the body of the victim.
4. Relative to the actual perpetrator of the crime, Defendant could only speculate as to whom the actual perpetrator was as he (Defendant) did not witness the act.
. . . . 
6. Defendant freely admits that he drove the car belonging to the victim, that he was merely present during the commission of the crime, with that presence being out of sight of the crime and without the knowledge of the act being in progress.

The signed verification/certification of service block to this document reads I have placed the original and one copy of this document in the U.S. Mail at the Lee Correctional Institution at Bishopville, SC, addressed to the; CLERK OF COURT, GREENVILLE COUNTY COURT HOUSE, GREENVILLE, SC: OFFICE OF THE SOLICITOR, GREENVILLE COUNTY, GREENVILLE, SC. (emphasis in original)
This document was not provided to Scott pursuant to his Rule 5, SCRCrimP, and Brady motions prior to his murder trial.  According to Scotts former PCR counsel, the document was present in the Greenville County Clerk of Courts Office in Adams file numbered 98-GS-23-2330, which is the enumeration for Adams obstruction of justice case.  Although the document also relates to Adams murder charge and is numbered accordingly (92-GS-23-7889), Scotts former PCR counsel stated in writing that the document was not present in Adams murder charge case file when she searched it in January 2000.
Scott filed a Rule 29(b), SCRCrimP, motion for a new trial in the circuit court, arguing that the States withholding of this document violated his due process rights by failing to comply with Rule 5, SCRCrimP, and the mandates of Brady v. Maryland, 373 U.S. 83 (1963).  The circuit court denied the motion, concluding the document, filed with clerk of court, was a matter of public record; thus, available to a diligent defendant and not within the scope of a Brady motion.
DISCUSSION
Scott argues the circuit court erred in denying his motion for a new trial because the States failure to provide Adams sworn statement to the defense violated his due process rights by failing to comply with Rule 5, SCRCrimP, and the mandates of Brady v. Maryland, 373 U.S. 83 (1963).[1]  We disagree.
It is a violation of a defendants due process rights for the prosecution to withhold evidence favorable to the defendant.  Brady, 373 U.S. at 87.  The prosecutions obligation to turn over evidence favorable to the defense applies to both exculpatory and impeachment evidence.  Gibson v. State, 334 S.C. 515, 524, 514 S.E.2d 320, 324 (1999). However, in Anderson v. Leeke, 271 S.C. 435, 438, 248 S.E.2d 120, 122 (1978), our supreme court held that the Brady rule applies only to favorable evidence which the prosecution has but which is unavailable to the defendant.  Accordingly, matters of public record available to a diligent defendant do not fall within the scope of a Brady motion.  Id.; see also State v. Allen, 276 S.C. 412, 414, 279 S.E.2d 365, 366 (1981); State v. Penland, 275 S.C. 537, 540, 273 S.E.2d 765, 766-67 (1981);  State v. Cox; 274 S.C. 624, 629, 266 S.E.2d 784, 787 (1980).
In the present case, Adams statement was filed with both the prosecution and the Greenville County Clerk of Court prior to Scotts trial.  Court filings are a matter of public record; thus, were available to Scott and his counsel through due diligence.  Accordingly, the document does not fall within the Brady rule.
Furthermore, a Brady claim is valid only if the accused can demonstrate the evidence was material to guilt or punishment.  Gibson, 334 S.C. at 525, 514 S.E.2d at 324.  When a defendant files a general Brady request, as Scott did in the present case, favorable evidence is material, and constitutional error results from its suppression by the government, [only] if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  Id. at 525, 514 S.E.2d at 325 (quoting Kyles v. Whitley, 514 U.S. 419, 432-36 (1995)).  A reasonable probability of a different result is . . . shown when the Governments evidentiary suppression undermines confidence in the outcome of trial. Id. 
Here, the evidence in question merely attacks the credibility of a witness whose varying versions of the events surrounding the victims murder were made apparent to the jury at trial.  Moreover, Adams statement contradicting his trial testimony does nothing to refute the testimony of the States star witness, Johnson, who was seated next to Scott during both the strangling and stabbing of Longino.  We conclude, after thorough review of the record on appeal, that had Adams contradictory written statement been presented at trial, Scotts jury would have reached an identical result.  While we are troubled by the prosecutions failure to disclose Adams statement, we do not feel it undermines confidence in the outcome of Scotts trial in light of Johnsons testimony.  See Porter v. State, __ S.C. __, 629 S.E.2d 353, 357 (2006) (holding impeachment evidence was not material to guilt or punishment when the failure to disclose did not undermine confidence in the outcome of defendants trial).  
In reaching this conclusion, we are aware of the recent South Carolina Supreme Courts opinion in Riddle v. Ozmint, __ S.C. __, __ S.E.2d __, 2006 WL 1389541 (2006), reemphasizing the consequential nature of the States Brady obligation and the grave impact on justice when the prosecution fails to comply.  However, given the facts of the present case, namely Johnsons consistent testimony and the thorough impeachment of Adams at Scotts trial, we find Scotts appeal comports much more soundly with factual scenario in Porter.
The circuit courts denial of Scotts motion for a new trial is therefore
 AFFIRMED.
KITTREDGE, SHORT, and WILLIAMS, JJ., concur. 

[1] Scott also argues that these documents prove Adams was offered leniency in exchange for his testimony in Scotts trial, an assertion which further belies Adams trial testimony.  Although the documents do reference attempts by the prosecution to illicit a guilty plea from Adams, they do not reflect that Adams was offered leniency for his testimony against Scott.